*14-4471-cv*
*Michael Kenwood Capital Management, LLC et al. v. Illarramendi*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of November, two thousand fifteen.

Present:

> DEBRA ANN LIVINGSTON,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges*,
> SIDNEY H. STEIN
> *District Judge*.*

_____

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff*,

FRACTAL FUND MANAGEMENT, LTD., FRACTAL P HOLDING, LTD., ROWBERROW TRADING CORP.,

*Intervenors-Plaintiffs*,

v.                                                     No. 14-4471-cv

MICHAEL KENWOOD CAPITAL MANAGEMENT, LLC; MICHAEL KENWOOD ASSET MANAGEMENT, LLC; MK ENERGY AND INFRASTRUCTURE, LLC; MKEI SOLAR, LP; HIGHVIEW POINT PARTNERS, LLC; HIGHVIEW POINT LP; HIGHVIEW POINT MASTER

---

\* The Honorable Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

FUND, LTD.; HIGHVIEW POINT OFFSHORE, LTD.

*Defendants-Appellees*,

FRANCISCO ILLARRAMENDI,

*Defendant*,

v.

RAMON ILLARRAMENDI,

*Interested Party-Appellant*.

_____

For Defendants-Appellees:     JONATHAN BRIAN NEW, Marc Edward Hirschfield, Baker & Hostetler LLP, New York, N.Y., *for Defendants-Appellees*.

For Interested Party-Appellant:     COLIN R. HAGAN, Shlansky Law Group, LLP, Chelsea, M.A., *for Interested Party-Appellant*.

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Interested Party-Appellant Ramon Illarramendi ("R. Illarramendi") appeals an October 27, 2014 order in the United States District Court for the District of Connecticut (Arterton, *J.*) approving a Distribution Plan and Initial Distribution of funds with regards to a Receivership that the district court established to protect and recover assets entangled in one of Connecticut's largest Ponzi schemes. Defendants-Appellees are the corporate entities of the Receivership, which is represented by a court-appointed receiver, John J. Carney ("Receiver").

**I.     Background**

On January 14, 2011, the Securities Exchange Commission ("SEC") initiated a criminal action in the United States District Court for the District of Connecticut against Francisco Illarramendi ("F. Illarramendi") for allegedly conducting a five-year-long Ponzi scheme that

resulted in several hundred millions of dollars in losses. *S.E.C. v. Illarramendi*, No. 3:11-cv-00078, 2014 WL 545720 (D. Conn. Sept. 10, 2014). At the same time it initiated the criminal action, the SEC also sought emergency relief, including a preliminary injunction to freeze the assets entangled in the fraud and the appointment of a receiver to manage the frozen assets. Shortly thereafter, the district court froze all the assets of more than fifteen entities allegedly employed by F. Illarramendi in the fraudulent scheme, established a Receivership to protect the assets, and appointed Carney as Receiver. The Receiver then undertook to recover assets belonging to the Receivership Entities and notified potential claimants of the deadline for filing claims against assets possessed by the Receivership Entities.

R. Illarramendi, the father of F. Illarramendi and one of the claimants, submitted claims to the Receivership Estate alleging that R. Illarramendi played an instrumental role in developing the business concepts for MK Energy and Infrastructure ("MKEI") and MK Nuclear Energy ("MK Nuclear"), entities that are part of the Receivership Estate. On December 20, 2013, the Receiver denied R. Illarramendi's claims regarding MKEI and MK Nuclear, finding them to be unsupported by MKEI and MK Nuclear's books and records in the Receiver's possession. Pursuant to the Claims Administration Procedures, which the district court had approved earlier that year, R. Illarramendi submitted an objection to the Receiver's denial of his claims.

On September 16, 2014, after the submission of all claims to the Receivership assets, the Receiver filed a motion seeking the district court's approval of (1) a proposed Distribution Plan, and (2) a proposed Initial Distribution. The proposed Distribution Plan outlined, *inter alia*, a classification of claims, an order of priority for disbursing recognized claims, and a methodology by which the Receiver would determine distribution amounts. Pursuant to the proposed Initial Distribution, certain distributions would be made, calculated pursuant to the Distribution Plan's

3

methodology, to an initial set of claimants. Under the proposed Distribution Plan, the Receiver would then make subsequent distributions, on a *pro rata* basis, with funds remaining in the Receivership Estate.

The district court invited submission of written objections to the Receiver's proposals. R. Illarramendi, whose claims regarding MKEI and MK Nuclear remained in dispute, filed an objection.[1] Chiefly, he complained of two individual distributions that were included in the proposed Initial Distribution. According to R. Illarramendi, the two distributions — to Petroleos de Venezuela S.A. ("PDVSA") and Fractal Fund Management ("Fractal"), respectively — should not be allowed, because those two claimants did not actually suffer any loss. R. Illarramendi, however, submitted no evidence in support of this claim.

On October 20, 2014, the district court held a fairness hearing on the Receiver's motion for approval of the Distribution Plan and the Initial Distribution. In preparation for the hearing, the Receiver calculated what he believed was the maximum possible value of R. Illarramendi's claims — namely, $7.375 million — and set aside that amount in a reserve fund. On October 27, 2014, the district court granted the Receiver's motion for approval of the Distribution Plan and the Initial Distribution. R. Illarramendi appealed from the district court's order, principally challenging the authorization of the distributions to PDVSA and Fractal. He did not seek a formal stay of the Initial Distribution. On December 12, 2014, the Initial Distribution was complete.

**II.     Discussion**

R. Illarramendi asserts that he has standing to challenge the district court's authorization of the distributions to PDVSA and Fractal because the $7.375 million reserve is insufficient. To

---

[1] R. Illaramendi's objection was one of four initial objections. The other objections were successfully resolved with the Receiver, so that R. Illarramendi is now the sole remaining claimant objecting to the Initial Distribution.

have standing under Article III to bring a claim, a plaintiff must show that (1) he "ha[s] suffered or [is] imminently threatened with a concrete and particularized 'injury in fact'"; (2) that is "fairly traceable to the challenged action of the defendant"; and (3) that is "likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

According to R. Illarramendi's standing argument, the erroneous distributions to PDVSA and Fractal have diminished any distribution R. Illarramendi may receive because fewer funds are now available in the Receivership Estate and subsequent distributions are to be calculated in a *pro rata* manner that depends on the amount of funds available. For the following reasons, we disagree that R. Illarramendi has shown that he has Article III standing.

Pursuant to the Claims Administration Procedures, if the Receiver and R. Illarramendi fail to reach an agreement as to the treatment of R. Illarramendi's MKEI and MK Nuclear claims, the district court will determine whether these disputed claims are valid (a matter on which we express no opinion). If the district court finds R. Illarramendi's claims valid, the district court will also classify his claims and decide how much his claims are worth. According to the Receiver, the district court may then exercise its discretion to decide what distribution amount R. Illarramendi should receive, or it may allow the Receiver to determine a distribution amount in accordance with the methodology outlined in the Distribution Plan.

The nature of the Claims Administration Procedures, as outlined by the Receiver before this Court, dooms R. Illarramendi's effort to establish Article III standing. For even assuming *arguendo* that R. Illarramendi has satisfied the other prongs of the standing analysis, any injury with which he is threatened is not fairly traceable to the authorization of the distributions to Fractal and PDVSA. This is because the district court has discretionary control over any distribution R.

5

Illarramendi ultimately receives. The district court may decide to distribute funds to R. Illarramendi in a particular amount, or it may instruct the Receiver to decide how much to distribute to R. Illarramendi pursuant to the Distribution Plan. Given these possibilities, the sufficiency of the $7.375 million reserve is largely inapposite to the question whether R. Illarramendi has standing to challenge the Initial Distribution and, in particular, the payments to Fractal and PDVSA, especially given that the record is undisputed that approximately $80 million remained in the Receivership Estate *after* the Initial Distribution. The reserve only ensures that the Receiver does not distribute those particular funds before the district court determines the validity of R. Illarramendi's MKEI and MK Nuclear claims. It does not affect the district court's ability to exercise its discretion in determining what amount R. Illarramendi should receive if his MKEI and MK Nuclear claims are deemed legitimate.

Because we conclude that any injury in fact R. Illarramendi may suffer is not fairly traceable to the authorization of the Fractal and PDVSA distributions, we do not reach the merits of R. Illarramendi's challenges to those distributions. We have considered R. Illarramendi's remaining arguments, including his due process challenge, and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6